UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:                                                                          Case No. 8-20-70948-reg

Sheryl Stark,                                                              Chapter 7

                                        Debtor.

-------------------------------------------------------------------X

## DECISION

       Before the Court is a motion by the chapter 7 trustee, Robert L. Pryor (the "Trustee") to

sell the Debtor's primary residence ("Property") pursuant to section 363(b) of the Bankruptcy

Code ("Sale Motion"). The Property is encumbered by a debt secured by a mortgage which

exceeds the value of the Property. Despite the lack of equity, the mortgagee has entered into an

agreement with the Trustee to "give up' a portion of the sales proceeds to provide the Trustee

with funds to pay his administrative expenses and make a distribution to unsecured creditors of

the estate. This agreement is predicated on this Court finding that the Trustee has the statutory

authority to enter into such an agreement and that the "give-up"[1] is not subject to the Debtor's

homestead exemption. The amount of the give-up is yet undetermined as the Trustee has been

unable to gain access to the Property to get a current valuation.

       The Trustee has limited the issue before the Court to the question of whether a trustee

may enter into an agreement with a mortgagee for the sale of a debtor's residence without the

consent of the debtor and without regard to the materiality of any potential distribution to

unsecured creditors. The Debtor opposes the Sale Motion, arguing that any sale proceeds coming

---

[1]      The terms "give-up" or "carve-out" are terms of art that have meaning and effect in various other contexts under the Bankruptcy Code. The Court uses these terms in this Decision to describe the funds that the secured lender is voluntarily apportioning to the estate despite having a valid and perfected lien entitling it to those funds.

into the estate must be distributed to her on account of the homestead exemption and therefore there is no benefit to the estate, a condition that the Trustee must satisfy in exercising his statutory powers.

This Court has been hesitant in the past to permit chapter 7 trustees to sell a debtor's over-encumbered primary residence unless the debtor consented to the sale and some portion of the sale proceeds were distributed to the debtor on account of an asserted homestead exemption. *Cf. In re Mannone,* 512 B.R. 148 (Bankr. E.D.N.Y. 2014) (denying trustee's motion to sell underwater primary residence where excess proceeds to the estate were not a give-up, but characterized as equity over the mortgage balance). In *Mannone*, this Court expressly left open the question of whether a carve-out, or give-up, from a trustee's short sale is subject to a debtor's homestead exemption. *Mannone*, 512 B.R. at 154 n.1. The Sale Motion puts that question squarely before the Court. Are the proceeds of a short sale[2] of a debtor's residence that a mortgagee gives up to the estate pursuant to an agreement negotiated by a chapter 7 trustee subject to the debtor's homestead exemption and payable to the debtor? Or are those funds available for distribution to creditors of the estate? The Sale Motion requires the Court to determine the nature of the funds comprising the give-up, i.e., whether those funds are attributable to the Debtor's equity in her property or are attributable to the Trustee's right to enter into agreements for the benefit of the estate. The Trustee will only be able to obtain a return for the estate necessary to satisfy the business judgment standard of section 363, and thus the Sale

---

[2]        The Court uses the term short sale in the literal sense to the extent a chapter 7 trustee's deal results in a sale to a third party for less than the balance of the mortgage. However, a trustee's negotiation for the benefit of the estate could also include some other negotiated transfer of an underwater property such as, for example, where a mortgagee credit bids its mortgage. The term short sale used in this Decision is intended to cover either scenario.

Motion can only be approved, if the sale proceeds are not subject to the Debtor's homestead exemption.

The Court finds that the Trustee in this case utilized a right conferred upon him upon the filing of the chapter 7 petition to obtain a benefit for the estate. When a debtor files for chapter 7 relief, he or she surrenders title and the right to control of their property to a chapter 7 trustee in exchange for a discharge of all debts without any repayment obligation.[3] An integral part of the transfer of title to, and control over, property of the estate, and the trustee's power to sell assets under section 363 of the Code, is the right of a chapter 7 trustee to negotiate with a secured lender for the benefit of the estate. *In re Bunn-Rodemann,* 491 B.R. 132, 135-36 (Bankr. E.D. Cal. 2013).

The value realized by the estate in a short sale such as the one proposed by the Trustee here derives from the Trustee's power to negotiate with the mortgagee and to sell the Property using the section 363 sale process. The mortgagee is willing to pay the estate for the benefits derived from the section 363 sale process which enables the mortgagee to avoid potentially extensive delays in a state court foreclosure. Although such a monetizing of the section 363 process is not explicitly permitted under the Code, it is also not prohibited. Moreover, it is consistent with a trustee's power to "use, sell or lease" property of the estate under section 363 and his or her duty to maximize the distribution to the estate. 11 U.S.C. § 704(a).

It follows, therefore, that the funds generated for the benefit of the estate by a chapter 7 trustee pursuant to the agreement proposed in this case are not attributable to a debtor's equity interest in a homestead, but rather are attributable to the trustee's exercise of his powers to

---

[3]      A debtor who wishes to remain in control of their property, i.e., keep their house, is able to do so under chapter 13 or chapter 11, but in return must pledge some payment to creditors in return.

negotiate with the mortgagee to gain some benefit for the estate. Therefore under these facts the funds are not subject to the homestead exemption, but rather are non-exempt property of the estate available for distribution according to the waterfall in chapter 7. 11 U.S.C. § 726. The Court can find no Code provision that would allow a debtor to demand a superior position in the distribution waterfall on account of the homestead exemption. *See e.g.*, 11 U.S.C. § 726(a). The right to assert and benefit from a homestead exemption is separate from the right to a distribution on account of a homestead exemption where no equity exists above the liens. The Court is required to adhere to the statutory scheme provided by Congress and the New York State legislature.

Although today's ruling may significantly alter the landscape for homeowners contemplating a chapter 7 filing, the Trustee's ability to effectuate short sales of underwater residences is not a foregone conclusion. The Court's ruling today is limited to deciding the Trustee's power to enter into the agreement with the mortgagee, the nature of the funds in the hands of the Trustee, and whether the funds are subject to the homestead exemption. The Court reaches no legal conclusion today whether under section 363(f) the Property can be sold "free and clear" of any interest in the Property the Debtor may have as to continued occupancy of the Property under a state law. *See In re Payne*, 512 B.R. 421 (Bankr. E.D.N.Y. 2014). Occupancy of real property and the rights derived from that occupancy and the rights of ownership of real property are not the same. What, if any, impact that point may have on the terms of the sale order contemplated by the instant motion is not being resolved by this Decision. Nor does the Court conclude that the Trustee's specific agreement with the mortgagee will ultimately be approved by the Court considering that the salient terms of the agreement, e.g., the net benefit to the estate, are yet unknown.

For these reasons and the reasons that follow, the Court finds that the Trustee has the authority to negotiate an agreement for a mortgagee to give up some of its return on the sale of the Debtor's residence in exchange for the Trustee's services in conducting a short sale of the residence, and the proceeds given up to the Trustee pursuant to the agreement are not subject to the Debtor's homestead exemption. The remainder of the relief requested in the Sale Motion will be adjourned for further proceedings.

## Factual Background and Procedural History

On April 20, 2004, the Debtor executed a note for $1,320,000 along with Paul Stark in favor of Sterling National Mortgage Company secured by a mortgage (the "Mortgage") on the Debtor's residence in Lawrence, NY (the "Property"). Mot. for Stay Relief 13, Feb. 27, 2020, ECF No. 12. A foreclosure action was commenced with respect to the Property on June 27, 2012. *Id.* at 41. A judgment of foreclosure and sale was entered December 5, 2019. *Id.* A foreclosure sale was schedule for February 18, 2020. Sale Mot. 3, Jul. 27, 2020, ECF No. 46.

The Debtor filed for chapter 7 on February 13, 2020. Robert L. Pryor was appointed as the chapter 7 trustee. The Debtor listed the Property on her schedules as being worth $2,222,400 and encumbered by a mortgage of $2,565,838.38 held by Nationstar Mortgage, LLC. Debtor's Chapter 7 Pet. & Schedules 23, Feb. 13, 2020, ECF No. 1. She claimed a homestead exemption of $170,825 in the Property pursuant to N.Y. CPLR 5206. *Id.* at 21. The Debtor also indicated an intent to surrender the Property on her statement of intention. *Id.* at 7.

On February 27, 2020, U.S. Bank as Trustee for NRZ Pass-Through Trust XI, as assignee of the Mortgage from Nationstar Mortgage, LLC, after a chain of several other assignments, filed a motion seeking relief from the automatic stay pursuant to section 362 with respect to the

5

Property (the "Motion for Stay Relief"). *See* Mot. for Stay Relief. The Debtor opposed the

Motion for Stay Relief on June 22, 2020. Debtor's Opp'n to Mot. Stay Relief, Jun. 22, 2020,

ECF No. 35. The Mortgage was assigned once more on August 28, 2020 to New Residential

Mortgage Loan Trust 2020-NPL 1 (the "Secured Creditor"), who filed a proof of claim for

$2,932,316.91 (the "Claim") on September 10, 2020. Proof of Claim 2-1, Sept. 10, 2020. The

Secured Creditor asserted pre-petition arrears of $2,020,617.04. *Id.*

The Trustee filed a Report of No Distribution on April 23, 2020 stating that he "neither

received any property nor paid any money on account of [the] estate" and asserting that the estate

"ha[d] been fully administered." Trustee's Report of No Distribution, Apr. 23, 2020. In his

report, the Trustee abandoned the Property. *Id.* The Trustee rescinded his Report of No

Distribution on May 8, 2020. Trustee's Letter, May 8, 2020, ECF No. 27. The Debtor received a

chapter 7 discharge on May 19, 2020. Order Discharging Chapter 7 Debtor, May 19, 2020, ECF

No. 30.

On June 16, 2020, the Trustee filed a motion to compel the Debtor to permit the Trustee

access to the Property (the "Motion to Compel"). Mot. to Compel, Jun. 16, 2020, ECF No. 32.

The Debtor filed opposition to the motion to compel on July 14, 2020. Debtor's Opp'n to Mot. to

Compel, Jul. 14, 2020, ECF No. 43. The Trustee filed the Sale Motion on July 27, 2020. Sale

Mot., Jul. 27, 2020, ECF No. 46. The Trustee and Secured Creditor seek approval of an

agreement whereby the Secured Creditor will pay the estate's administrative expenses and

provide funds to enable some distribution to unsecured creditors of the estate. The Debtor filed

opposition to the Sale Motion on August 14, 2020 (the "Opposition") arguing that the give-up

must be paid to the Debtor first in satisfaction of her homestead exemption. Debtor's Opp'n,

Aug. 14, 2020, ECF No. 47. The Trustee filed a reply to the Opposition six days later (the

"Reply"). Reply, Aug. 20, 2020, ECF No. 49. The hearing on the Trustee's Motion to Compel

was adjourned to allow resolution of the instant motion first. A hearing on the Sale Motion was

held on August 24, 2020, and the Court took the matter under submission.

### The Parties' Positions

The Trustee avers that he is permitted to sell the Property free and clear of liens and

encumbrances, stating that it is property of the estate within the meaning of section 541 and

asserting his power to sell the Property pursuant to, and subject to the limitations of, section 363.

The Trustee further asserts that the Debtor is not entitled to a homestead exemption from any

give-up because the Debtor had no interest in the Property when she filed the chapter 7 petition,

which means that the "funds derived from the carve-out represent the value added from the

Trustee's efforts and powers, *not* value of the property itself." Sale Mot., at 11-12. The Trustee

relies principally on the holdings in *Baldridge v. Ellmann (In re Baldridge),* 553 F. App'x 598

(6th Cir. 2014) (not marked for publication); *In re KVN Corp.,* 514 B.R. 1 (B.A.P. 9th Cir. 2014);

*In re Diener,* No. 11-83085 (MHM), 2015 WL 4086154 (Bankr. N.D. Ga. Jul. 1, 2015); *In re*

*Bunn-Rodemann,* 491 B.R. 132 (Bankr. E.D. Cal. 2013).

The Debtor objects, stating that the Trustee is not permitted to "sell an over-encumbered

secured property by striking a deal with the Secured Creditor in which a small carve-out of the

sale proceeds is made available to the Trustee for distribution to unsecured creditors." Opp'n at

4**.** The Debtor relies principally on the holding of *In re Christensen,* 561 B.R. 195 (Bankr. D.

Utah 2016), *aff'd sub nom*. *In re Bird*, 577 B.R. 365 (B.A.P. 10th Cir. 2017). She also asserts that

the Handbook for Chapter 7 Trustees ("Trustee Handbook")[4] instructs that a trustee should not

---

[4]        U.S. Dep't of Justice, Executive Office for U.S. Trustees, Handbook for Chapter 7 Trustees (Oct.
1, 2012) available at: https://www.justice.gov/ust/file/Handbook_for_Chapter_7_Trustees.pdf/download
(the "Trustee Handbook"). *See infra,* Discussion, Section B.

sell property subject to a secured interest unless the sale generates a return for unsecured creditors and that the Trustee in this case has not made a showing that any sale of the Property would result in a meaningful distribution to unsecured creditors. The Debtor asserts that the Sale Motion must be denied and the Property abandoned by the Trustee because, according to the Debtor, unsecured creditors can receive no distribution after payment to the Debtor on account of her homestead exemption.

The Debtor also asserts that she would be entitled to payment on account of her homestead exemption from any sale proceeds, arguing that when a secured creditor agrees to accept less money in satisfaction of its claim, the remaining, or carved-out, proceeds constitute equity subject to the homestead exemption and do not result from the trustee's negotiation powers. The Debtor also argues that the Trustee is prohibited from selling the property free and clear of liens and encumbrances because the Debtor retains her interest in her homestead exemption and does not consent to a sale of the Property. 11 U.S.C. § 363(f)(2).

The Debtor further asserts that a sale of her homestead within the bankruptcy case would cause substantial harm, in that her husband suffers from significant health issues and could contract the COVID-19 virus currently circulating the world should access to the property be granted to the Trustee and that she would have trouble finding a new home without receiving payment on account of her homestead exemption.

The Trustee responds that potential harm to the Debtor and/or the materiality of a distribution to the estate is not before the Court today. Rather, the issue before the Court is limited to deciding whether the Trustee has the authority to "sell the over-encumbered [ ] Property, free and clear of all liens and encumbrances, and then from the proceeds of the sale attributable to the [Secured Creditor's] mortgage, receive a carve-out for the benefit of the estate

not subject to the Debtor's homestead exemption." Trustee's Reply, at 1. The Trustee reasoned that he could not make an informed decision as to the exact nature of the carve-out and whether there would be a meaningful distribution to unsecured creditors without obtaining access to inspect the Property and only sought an answer to the legal issue of whether such a sale is permissible. The Trustee further asserts that the alleged harm to the Debtor is not relevant in the Court's analysis of whether he has authority under the Code to sell the Property.

**Discussion**

Short sales of underwater properties by chapter 7 trustees are a relatively recent practice initiated by trustees in an effort to generate some benefit for unsecured creditors in the bankruptcy. Historically, a chapter 7 debtor with little or no equity in their real property could feel safe that the property would ride through the bankruptcy unaffected and the secured creditor would retain its right to foreclose outside of bankruptcy. More recently, mortgage lenders have found, for a variety of reasons, that a section 363 sale in bankruptcy is preferable to state court foreclosure. They have therefore been motivated to provide some monetary incentive to the bankruptcy trustee to use his or her statutory authority to quickly and economically dispose of the property. *See Bunn-Rodemann,* 491 B.R.at 135; *see also Diener,* 2015 WL 4086154, at *3 ("Creditors would like an efficient sale process culminating in a sale for the highest possible value; the debtor often wants to remain in the property as long and as cheaply as possible; and the trustee wants to leverage his power to facilitate the other parties by recovering some value for the estate.").

The Sale Motion requires this Court to determine whether a debtor may demand a distribution on account of his or her homestead exemption from proceeds of an agreement between a chapter 7 trustee and mortgagee where the mortgagee has agreed to give up funds to

the estate from their return on a short sale of the debtor's primary residence. Courts around the country differ on how to characterize the sale proceeds in the hands of the trustee.

For the reasons that follow, this Court finds that the Trustee has the authority to negotiate a give-up with a mortgagee for the benefit of the estate. The Court further finds that those funds are not properly characterized as proceeds of the sale of real property, but rather are attributable to the rights and powers of the trustee granted to him under the Code and exercised by him for the benefit of the estate. Thus, the Debtor cannot lay claim to those funds on account of the homestead exemption.

A. *The Rights and Powers of a Chapter 7 Trustee*

Upon the filing of chapter 7, all of a debtor's "legal or equitable interests [] in property" are transferred to the estate pursuant to section 541 of the Code. 11 U.S.C. § 541; *Schwab v. Reilly*, 560 U.S. 770, 774 (2010) (internal citations omitted). The debtor may reclaim certain of this property pursuant to the exemptions afforded by section 522 or upon abandonment of the asset by a chapter 7 trustee. *Schwab*, 560 U.S. at 792, 794, n. 21; *In re Magee*, 444 B.R. 254, 260 (Bankr. S.D.N.Y. 2011).

"The estate is placed under the control of a trustee, who is responsible for managing liquidation of the estate's assets and distribution of the proceeds." *Law v. Siegel,* 571 U.S. 415, 417 (2014). As "the representative of the estate" pursuant to section 323(a), section 704 charges a chapter 7 trustee with a duty to "collect and reduce to money the property of the estate for which such trustee serves . . ." among eleven other tasks. 11 U.S.C. §§ 323, 704. While the trustee must treat all parties fairly, the trustee's principal duty is to "administer estate property so as to maximize distribution to unsecured creditors, whether priority or general unsecured." *In re All Island Truck Leasing Corp.*, 546 B.R. 522, 532 (Bankr. E.D.N.Y. 2016) (citations omitted).

The Court finds that a debtor's rights incidental to ownership of real property, including the right to negotiate with the mortgagee, also transfer to the estate upon a debtor's filing for bankruptcy. *See Bunn-Rodemann,* 491 B.R. at 135-36.

B.  *A Chapter 7 Trustee's Authority to Sell Fully Encumbered Property*

Having determined that a trustee generally has the authority to sell property of the estate for the benefit of unsecured creditors, the Court now addresses specifically whether a trustee has the authority to sell a debtor's fully encumbered residence and negotiate a give-up for the benefit of the estate. "A carve-out [or give-up] agreement is generally understood to be an agreement by a party secured by all or some of the assets of the estate to allow some portion of its lien proceeds to be paid to others, i.e., to carve out its lien position." *KVN Corp.,* 514 B.R. at 6 (internal quotations omitted). This Court has held that "[s]uch carve-outs are presumptively improper unless they provide some benefit to unsecured creditors; a carve-out that merely benefits administrative professionals is improper." *All Island,* 546 B.R. at 533.

Although not binding on this Court, chapter 7 trustees are guided in the discharge of their statutory and fiduciary duties by a handbook authored by The Office of the United States Trustees (the "Trustee Handbook"). U.S. Dep't of Justice, Executive Office for U.S. Trustees, Handbook for Chapter 7 Trustees (Oct. 1, 2012) available at:

https://www.justice.gov/ust/file/Handbook_for_Chapter_7_Trustees.pdf/download

The Trustee Handbook specifically addresses a trustee's role in the context of administering a fully encumbered asset. "A trustee may sell assets only if the sale will result in a meaningful distribution to creditors." Trustee Handbook at 4-14. "If the sale will not result in a meaningful distribution to creditors, the trustee must abandon the asset." *Id.* "Generally, a trustee should not sell property subject to a security interest unless the sale generates funds for the benefits of

unsecured creditors. A secured creditor can protect its own interests in the collateral subject to the security interest." Trustee Handbook at 4-16. Relevant to the issue at hand, the Trustee Handbook does provide that a "trustee may seek a 'carve-out' from a secured creditor and sell the property at issue if the 'carve-out' will result in a meaningful distribution to creditors." Trustee Handbook at 4-14.

While the general rule is that a trustee should not administer fully encumbered property only for the benefit of a secured creditor, there is no *per se* prohibition against a trustee using his statutory power to create new value for unsecured creditors. *KVN Corp.,* 514 B.R. at 6-7.[5] Indeed, the Court finds that such efforts fall squarely within the trustee's principal duty to maximize a return for unsecured creditors. Prior to filing, the Debtor, as the owner of the Property and obligee on the note and Mortgage, had the power to negotiate a deal with the Secured Creditor whereby, in theory, she could have received the same 'incentive payment' the Trustee now seeks. It follows that a trustee, as the holder of title to the Property, may exercise these rights in carrying out his statutory obligations to maximize a return to unsecured creditors.

However, a chapter 7 trustee's control over property of the estate is not unfettered. Section 363(b) permits the trustee to sell property of the estate outside of the ordinary course of business but only with the approval of the Court after a notice and hearing. *See All Island,* 546 B.R. at 533 ("Prior to administering an asset of the estate, a trustee must determine that doing so will fulfill [his or her fiduciary] duty – a trustee must prospectively analyze whether an asset will provide a net benefit, after payment of necessary secured claims and costs of administration, that will be distributable to unsecured creditors."). The legal standard to be applied to the sale of

---

[5]     Caselaw which imposes a general rule and presumption that carve-outs with a secured creditor should be rejected arise from past abuses by trustees in pursuing these deals primarily for themselves with only a nominal amount being paid to the estate. *KVN Corp.,* 514 B.R. at 7.

underwater property by a chapter 7 trustee is not being decided today; the Court is not being asked to approve any sale or agreement today. The Court finds only that a chapter 7 trustee has the authority to sell over-encumbered real property and retain for the benefit of the estate the give-up it receives from the mortgagee upon such sale. The issue then becomes whether a debtor can lay claim to such a give-up on account of the homestead exemption.

### C. The Carved-Out Funds Are Attributable to the Trustee's Rights and Powers and Not to the Debtor's Equity

It is undisputed that the balance of the debt secured by the mortgage exceeds the value of the Property. In addition, the Debtor indicated an intention to surrender the Property. Yet she now objects to a section 363(b) sale of the Property, arguing that any funds that the Secured Lender pays to the Trustee for the benefit of her creditors (creditors who have been discharged in this bankruptcy) are attributable to her equity in the Property and must be distributed to her on account of the homestead exemption.

Courts across the country disagree as to how to characterize the carved-out funds. The Trustee urges the Court to accept the holdings in *Diener* and *Bunn-Rodemann*, which find that the carved-out funds flow from the trustee's negotiation rights and not the debtor's equity in the property. *Diener*, 2015 WL 4086154, at *3; *Bunn-Rodemann,* 491 B.R. at 135-36.  The Debtor urges the Court to follow the holdings of *Christensen* and *In re Wilson,* 494 B.R. 502 (Bankr. C.D. Cal. 2013), which attribute the carved-out funds to equity in a debtor's residence and require the funds to be paid to the debtor on account of the homestead exemption regardless of how the funds are generated. *Christensen,* 561 B.R. at 209; *Wilson,* 494 B.R. at 506. For the reasons that follow, this Court agrees with the holdings in *Diener* and *Bunn-Rodemann.*

The Court finds that the funds proposed to be paid by the Secured Creditor for the benefit of the estate arise not from any equity in the Property but from an agreement essentially

monetizing the Trustee's power under the Code to dispose of the Property utilizing the section 363 process. It is abundantly clear that there is no equity in the Property and no money can be can reasonably be attributed to the Debtor's ownership interest in the Property. *Bunn-Rodemann*, 491 B.R. at 135-36. By exercising the right to negotiate a deal with the Secured Creditor the Trustee creates value for the estate where none existed. In fact, in this case, the Secured Creditor moved for relief from the automatic stay to continue with a pending foreclosure proceeding. Were that motion granted, the estate would be guaranteed to receive nothing on the disposition of the Property. Instead, the Trustee, pursuant to his right to negotiate, has found a way to create value for the estate despite the Debtor's lack of equity in the Property as of the petition date.

An analysis of how the homestead exemption operates outside of bankruptcy further clarifies that the carved-out funds are not, and under state law were never intended to be, subject to the homestead exemption as argued by the Debtor. Outside of bankruptcy, the homestead exemption is primarily a tool which restricts the rights of the judgment lien creditor to enforce their lien against a debtor's residence. In general, it is not a statutory provision which can be monetized by a judgment debtor. CPLR 5206(a) provides, "[p]roperty of one of the following types, not exceeding [$170,825] in value above liens and encumbrances, owned and occupied as a principal residence, is exempt from application to the satisfaction of a money judgment, unless the judgment was recovered wholly for the purchase price thereof . . ." N.Y. CPLR 5206(a). Section 282 of New York's Debtor & Creditor Law ("DCL") expands the homestead exemption in the context of a bankruptcy and permits a debtor to exempt from property of the estate the real property that is exempt from application to the satisfaction of a money judgment under state law. The homestead exemption can only be monetized by a debtor in bankruptcy when the debtor actually has equity in their residence. *Cf. In re Ward*, 595 B.R. 127, 137 (Bankr. E.D.N.Y. 2018)

("The New York homestead exemption allows a debtor to exempt *his or her interest* in real property not exceeding a specified dollar amount in value above liens and encumbrances. . .") (emphasis added).

The Court's findings are consistent with the pre-bankruptcy rights of the parties. Hypothetically, if the Debtor, prior to the bankruptcy filing, negotiated a similar deal with the Secured Creditor which resulted in the Secured Creditor paying her money to vacate the Property in exchange for a consensual sale of the Property, those funds in her hands would be subject to attachment by creditors. This is true because CPLR 5206(a)'s homestead exemption does not apply to funds arising out of the voluntary sale of the homestead. *See In re Santiago*, No. 11-12843 (ALG), 2012 WL 393405, at *2 (Bankr. S.D.N.Y. 2012) (marked not for publication) ("[W]hen a debtor has sold homestead property before filing for bankruptcy, CPLR 5206(a)'s exemption does not apply."); *Citibank, N.A. v. Cambel*, 501 N.Y.S.2d 133 (N.Y. App. Div. 2d Dept. 1986) ("The homestead exemption in CPLR 5206 is applicable in proceedings involving the "satisfaction of a money judgment" and to no other proceedings."). It is also true because the resulting funds stem from the Debtor's willingness to cooperate with a mortgagee and reduce the time and expense of a state court foreclosure proceeding. This is simply two parties agreeing to a financial settlement of what could be a protracted legal fight. The right to negotiate a deal passed to the Trustee when the Debtor filed for chapter 7 relief. The Trustee is merely stepping into the shoes of the Debtor and reaching a deal for the benefit of the estate.

Similarly, if the Debtor sold the Property just before the bankruptcy filing all the sale proceeds *in her hands*, even if attributed to some hypothetical equity in the Property, would be subject to attachment by her creditors. The funds in the hands of the Debtor lose the protections of the homestead exemption. The Debtor now asks the Court to recharacterize those funds,

preclude any distribution to unsecured creditors by granting the funds protections that are not bestowed under state or bankruptcy law, and at the same time grant her a chapter 7 discharge. This Court finds no basis to do so. The Debtor's proposed scheme is inconsistent with the bankruptcy process and would inequitably reward an already discharged debtor to the detriment of her creditors by paying her a distribution on a homestead exemption even though she has no equity in the property.

This holding does not deprive debtors of the statutory rights afforded to them in bankruptcy in relation to the homestead exemption.[6] A debtor may still assert and derive benefits from the homestead exemption despite not having equity in the property. *In re Brody,* 297 B.R. 5, 6-9 (Bankr. S.D.N.Y. 2003). But the Debtor has asked this Court to grant her benefits from the homestead exemption which are not granted by state law or the Code.

As discussed above, all the funds carved out from the sale of the Property were generated by the Trustee using his statutory rights and powers to create value for the estate, where none previously existed, pursuant to an agreement negotiated with the Secured Creditor. The funds in the hands of the Trustee are subject to distribution according to the waterfall dictated by section 726 of the Code. Under that waterfall, a debtor receives a distribution only when all creditors have been paid in full. The facts of the case at hand do not create rights for a debtor to demand a

---

[6] For instance, if there is equity above the liens against a debtor's primary residence, the debtor will still receive a distribution on account of the homestead exemption upon a trustee's sale under section 363. Also, section 522 permits a debtor to avoid judgment liens on his or her primary residence even where the debtor has no equity. 11 U.S.C. § 522(f) (" . . . the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor *would have been entitled* under subsection (b) of this section . . . (2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—(i) the lien; (ii) all other liens on the property; and (iii) the amount of the exemption that the debtor could claim *if there were no liens on the property*; exceeds the value that the debtor's interest in the property *would have in the absence of any liens*.") (emphasis added).

distribution on account of her homestead exemption when there is no equity in the debtor's primary residence above the liens.

## Conclusion

Notwithstanding the analysis above, the Court is aware that this Decision may be viewed as encouraging chapter 7 trustees to seek out opportunities to sell debtors' homes without their consent. This is not the Court's intention. Nor is it the intention of this Court to create greater obstacles for people seeking the protection afforded by bankruptcy. However, it is imperative that prospective debtors be aware of the gravity of filing for chapter 7 relief. When a debtor files a chapter 7 petition, he or she surrenders many of their rights with respect to their property to the chapter 7 trustee. A debtor must understand the risk that they may emerge from bankruptcy divested of their ownership interest in their residence.

That said, this Decision answers a very specific legal question presented by the parties. The Court finds that under the laws as laid out by Congress and the New York State legislature, the Trustee is statutorily authorized to pursue a carve-out deal as proposed in the Sale Motion, subject to the limitations of section 363, without any requirement that the Debtor receive any of the funds given up by the Secured Creditor. The Court is bound by the law. However, to the extent that the law allows this Court to exercise its discretion in approving the eventual sale, this discretion will be exercised with fairness and compassion.

**Dated: Central Islip, New York**
**September 25, 2020**

**Robert E. Grossman**
**United States Bankruptcy Judge**